Good morning, Your Honors. May it please the Court. My name is Jonathan Amanoff, and I'm here on behalf of the petitioner, Appellant Alphonso Howard. I intend to reserve two minutes for rebuttal, if that's all right. Sure. Just keep your eye on the clock. Thank you, Your Honor. Your Honors, we've been instructed in this case that the only way we could have obtained a stay under Rines v. Weber was if we affirmatively harmed Howard's then-pending state habeas petition and are not complied with California's procedural requirements and laws. In issuing that order, the district court abused its discretion, and unless this court steps in right now, Mr. Howard could be permanently prejudiced from proving his entitlement to relief in this potentially meritorious capital habeas case in which the jurors actually deliberated for over three weeks before sentencing Mr. Howard to death. I'm mindful of the fact— Do you have the jurisdiction? I would like to address that right now, Your Honor. It's important since jurisdiction is mandatory. Yes, of course. Your Honor, there are two bases for jurisdiction. I think the court can exercise its jurisdiction under the collateral order doctrine or under its powers of mandamus. I'd like to start with the collateral order doctrine, and I think the contested issue is whether this issue is reviewable after final judgment. Our position is that it's at least debatable and unclear under Ninth Circuit law and under the Supreme Court law. Why? Why, Your Honor? Because our concern is the AEDPA statute of limitations has already expired, and we are concerned that if we are forced to remove these claims, we'll be permanently barred from bringing that back in under the statute of limitations. Bryan's itself was a collateral appeal to the Supreme Court, and there's actually no case law that ultimately holds after final judgment that those claims are timely. I'm not sure that the Supreme Court's jurisdiction is limited to final judgments, but let me ask you. I don't understand. Suppose the judge, he doesn't issue the stay in abeyance. He decides the petition, which he hasn't. Yes, Your Honor. He could decide it in your favor, but let's assume he decides it against you. You take an appeal and you say not only did he make a mistake, but he erred in not letting us go back. Yes, Your Honor. Go up, rather. Your Honor, I don't know if he is allowed to do that. I don't think there's Ninth Circuit case law that affirmatively holds that. Because this is a capital case, we're trying to be extra cautious. But there are also practical concerns here that I'd like to briefly address. For example, one of our claims is ineffective assistance of counsel at the penalty phase of trial. We argue that counsel was ineffective for not only failing to develop mitigating evidence, but also for failing to rebut aggravating evidence. The aggravator portion of the claim is unexhausted. So we're going to be forced to remove the entirety of that aspect of the deficient performance claim, which is going to affect the cumulative analysis of Strickland prejudice. If I have to then wait until final judgment, come to this court, ask you to reverse, hopefully get the reversal, go back to district court, brief 2254D procedural bars, evidentiary hearing, when's that going to be? And we're talking 10 to 15 years down the line. And my witnesses on that claim— But the delay in this case has been staggering. I mean, I don't understand how a crime committed in 1992 doesn't get resolved, I think, by the California Supreme Court into what, 2008? Even later, Your Honor. We didn't get the— I mean, so—and, you know, let's be realistic. In the death penalty case, part of the goal, and it may have happened here, there was one—I don't remember the time frame, but you practically waited until the last day to file a federal habeas petition. A defendant wants to delay. The goal, in many instances, is to delay this, and who knows what could happen. Your Honor, with respect, I understand that is the goal in many capital habeas cases, and if that was my goal here, I would wait until final judgment and then file my appeal, because I think this Rines denial is so clearly erroneous that we're ultimately going to get it reversed. Whether the Court does it now or after final judgment, it's in our best interest to move this case forward now. Right, but, you know, jurisdiction isn't a technicality. I mean, we can't just say— I just don't see how we have collateral order jurisdiction over this, because you even admitted just now that you could appeal this, that the denial of the Rines or the Rines denial of the non-dismissed claims is not reviewable. I guess I—I don't know if you can't dismiss it, but—so you wouldn't have a hearing on those cases? You're saying the merits of the non-dismissed claims are effectively not reviewable, not whether or not a Rines stay should issue? Exactly, Your Honor. My concern is that the merits of the claims won't be reviewed. I don't know if that's the standard for collateral order. Well, I think that can be taken into account into the effectively unreviewable analysis, and I think the Court did take that into account. I believe it was in Blake v. Baker. I think we're very different than that case, because they did allow their entire petition to be dismissed right away, and so they're not suffering this period of delay that we will suffer if we just dismiss our unexhausted claims. I think there's also kind of an equitable concern here that if we have to proceed with this entire case in district court only to come back and do the whole thing all over again, that can't possibly be in anyone's best interest. And I think there's some language in the Biddeker decision which speaks specifically to—I could quote the opinion—considerations of inconvenience and cost to the judicial system as a whole and the danger of denying justice by delay, a favor asserting appellate jurisdiction at this time. So I think those three reasons. Well, can I ask you, in light of that, why did you wait virtually—the California Supreme Court denied your petition on the merits, and you waited almost a year to the day to file a petition for a writ of habeas corpus. Yes, Your Honor. How could we take seriously this concern? Why did you wait a year? Well, Your Honor, we did have an ongoing investigation. I mean, we got our most recent declaration within just a couple weeks of filing that petition. In the course of that year, my office also filed a cert petition on the state habeas petition to the United States Supreme Court, and we continually investigated the case. We weren't sitting on our hands during that period of time, and the Supreme Court has described a statute of limitations as encouraging diligent prosecution of claims. Because we were within that statute of limitations, I think we were diligent. Well, am I correct that in the meantime, as this case has gone—you've practically had a stay and an abeyance for seven or eight months, if not longer, because of a panel in this case stayed the proceedings—a motions panel stayed the proceedings in the district court for about seven or eight months. That's right, Your Honor. So there could be a decision of the California court imminently. I hope so. I mean, we're now fully briefed in the California Supreme Court. We did go ahead and file the exhaustion petition after Ryan's motion was denied. You know, I will say one of the things that we were waiting for in that period of time was the federal exhaustion order, which we believe is compelled by the California Supreme Court's decision in Reno and is also contemplated by the central district local rules, which specifically require that the parties meet and confer to resolve issues related to exhaustion. But— And does a consideration, to get to another aspect of the collateral order rule, doesn't the stay and abeyance motion also involve a consideration of the merits? It's not entirely separate, in fact. I believe it is. I mean, the analysis under Ryan's questions, whether it is potentially meritorious, their claims are potentially meritorious. Yes, right, which could involve a substantial consideration of the merits. With respect, Your Honor, I think it's just a very cursory analysis of the merits. I mean, I totally see your point. But in the cases where this court has dealt with Ryan stays on collateral order jurisdiction, that has never been a holdup in the analysis. The question has always been on reviewability, on appeal. You've got about a minute left. Do you want to save it? Yes, please, Your Honor. Okay. We'll hear from the State. Good morning, Your Honor. May it please the Court. David Medea, Correspondent. In this case, Judge Ferguson's order should not be disturbed. Initially, this Court lacks jurisdiction to hear this appeal. And also, Judge Ferguson did not abuse his discretion in denying the Ryan stay. I'm going to address primarily the jurisdiction issue on this. If the Court would like me to address the actual merits of the Ryan's denial, I will do that as well. But first off, Petitioner cannot show any prejudice as a result of this Court dismissing this matter for lack of jurisdiction at this time. This order is absolutely appealable after final judgment. And so whatever the Court decides, whenever the Court decides on the merits of the Ryan stay, Petitioner will be in the exact same position as it would have been otherwise, whether that happens after final judgment. Except then you'd have to go back, if he's successful, you'd have to go back to the district court and do over again. And that's a much harder thing to get an appellate court to do than to... Well, he wouldn't have to do it exactly over again, Your Honor. I mean, he would just have to litigate the claims that had been dismissed. And those claims would then be... That claim is now pending before the California Supreme Court? Yes, that's correct. And I'm not familiar enough with the Supreme Court practice. How long does it take them to decide cases like that? It really varies, Your Honor. It could be within a year. It could be longer. There's no set standard. When was it filed? It was filed September of last year. And it is fully briefed, I believe. Petitioners reply briefed to our informal response. This is not covered by the 90-day rule? No. No, it's not. Because there's no argument. Right. That's correct. So there's no submission, and so there's no 90-day rule. Exactly, Your Honor. And the Court just asked for a response. The Court did not ask for an actual answer in this case yet. And so we're just in the preliminary stages. And Petitioner, I believe, just filed a reply this week. And so that would actually end briefing in that case. And from this point on, how long the California Supreme Court decides to decide the case, we don't know at this time. There were about 15 issues, I believe, in a 45-page brief. So we're not anticipating it taking an extended amount of time. What has happened to this case? I think nothing has happened to this case while this appeal was going on or in the district court. That's correct. It's been stayed. I mean, it didn't have to be because there's no mandate. There's no – it's an interlocutor appeal, so. Yes, Your Honor. So effectively, the appeal has brought stay. Yes. Well, it's actually – Petitioner actually moved for a stay specifically, and this Court actually granted that stay, emergency stay, in the district court. District court actually wanted to move forward and actually issued an order for us to file an answer. Oh, I see. So we issued a stay. Yes. Yes. There is actually an actual stay in this case. I mean, the motions panel issued a stay, right? Yes, that's correct. Okay. I see. It's been stayed anyway, so. The case is stayed until it comes back? Yes. So they'll file a cert petition. They'll buy us another four or five months, right? They'll ask us to stay, mandate if it's adverse, and then they'll ask for extensions of time, and then they'll file the cert petition, and maybe by then the California Supreme Court will have ruled. I believe that's correct. And then, voila. There's no end in sight for this case. It's no longer missed. I think that much is clear. What are we doing here? Anyway, okay. I think that speaks to the fact that this court doesn't have jurisdiction at this time for all those reasons. There's no reason for this court to actually hear this matter at this time. It wasn't a bad strategy to bring this appeal. For purposes of delay? Not for purposes of delay. They have a stay, so they don't want to dismiss the state claims as unexhausted because then they'll be barred. The one-year rule will start going, right? So they have the hope that the California court will rule, well, this case is on appeal and stayed. Yes. So it's a good strategy. I, like Judge Prayerson, don't understand why they didn't file the state petition right away when the California Supreme Court invited them to. Well, that's the main issue here, Your Honor. That's the merits of the run state denial itself. I mean, the question here is whether a petitioner deserves a stay because they did not follow state law. In this case, the petitioner didn't follow state law on three very clear occasions. We have a delay of an extra four years because of that. And so there was no good cause. So they wanted to have supplemental counsel appointed to investigate whether the federal public defender was ineffective in failing to file that petition? That claim was in the petition, I believe, or in the opening brief. I don't think we can have an opinion on that. I think that's between this court and the party. Right. As to whether supplemental counsel should be appointed. So you don't have an objection or you don't concur with that, no opinion at all? At this time, I have no objection to that. I don't think it's proper for us as the other party to actually have an opposition or objection at this time. Okay. Okay, let's try to split it up a few. I'm sorry. I'm sorry. Are you done? If the court would like me to address more of the Rhinestate denial of merits, I could do that. I think it all falls into itself, doesn't it? I believe that's right. It pretty much does. Okay, thank you. Thank you, Your Honor. Just a few quick points, Your Honors. Judge Wardlaw, I haven't sought any extensions in this case. Actually, that's not right. I sought one extension of time in this case, which was denied by the district. No, no, no. I'm not suggesting that. I'm just thinking that the hope for this petitioner is that the California Supreme Court rolls on exhausted claims. And I understand why Judge Preyerson felt that it should have been filed a lot earlier and we shouldn't be in this position. Right. We don't have much of a hope that the California Supreme Court is going to deny our exhaustion petition before this court rules. We literally just finished informal briefing last week. Sometimes when you sit on claims, you lose them. Yes, Your Honor. And if I could just address that really quickly. We didn't file an exhaustion petition while the current petition was pending because we were really concerned about criticizing the pending petition. And basically what we were going to have to do is explain why we were filing a new petition, why that was timely. And our excuse for that was the ineffective assistance of counsel of the existing state habeas lawyer. If we were to explain her deficiencies and how Mr. Howard was prejudiced by that, we would essentially be telling the California Supreme Court that the petition pending before them, which was the petition that had the best chance of merits review, was useless, was valueless, and that they should instead replace that with our petition. And we didn't think that could possibly be in Mr. Howard's best interest. That was really what governed our thinking then. It was also the Reno case was pending. The California Supreme Court had issued this order to show cause, showing quite a lot of aggression towards federal habeas counsel. And we were trying to figure out what it was they wanted us to do. As soon as that case came out, it became very clear that we were supposed to go to federal court first, get a federal exhaustion order, and then file the exhaustion petition. And that's ultimately what we did. I think the problem here wasn't so much our delay. I think it was that he had a totally inadequate state habeas process that we had to then jump in on and try and put back together. The state habeas petition had 19 exhibits attached to it. Five of those were generalized exhibits about lethal injection. So to the 14 exhibits that actually applied, one was a declaration by someone that ---- All right. I don't think we should get into that here. Okay. Thank you. Okay. And just one last point. I see I'm almost out of time. We will have to do this case all over again if it's ultimately reversed because of the cumulative prejudice analysis in both our Strickland claims and our Bayer claims. So there are good reasons to reverse this right now. Our whole goal here is just to litigate one habeas petition intact, and that's just what we're trying to do. All right. Thank you. Thank you, counsel. Case is argued. We'll stand with it. That was the last case on the calendar. We are adjourned. All rise.
judges: Kozinski, Wardlaw, Korman